## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPMARK FINANCE INC.,<br>a California corporation, as Servicer for<br>U.S. BANK NATIONAL ASSOCIATION,<br>as Trustee for the Registered Holders of<br>FMAC LOAN RECEIVABLES TRUST<br>1998-D, a special purpose business trust<br>organized and existing under the laws of<br>the State of Delaware,<br><br>                    Plaintiff<br><br>          v.<br><br>SONDOCATT INVESTMENTS, L.L.C., a<br>Massachusetts limited liability company and<br>ROBERT T. BURDA, an individual,<br><br>                    Defendants. | Case No. |

## COMPLAINT

NOW COMES Capmark Finance Inc., as Servicer for U.S. Bank National

Association, as Trustee for the Registered Holders of the FMAC Loan Receivables Trust 1998-

D, by and through its Shatz, Schwartz and Fentin, P.C., [1] and for its complaint against Sondocatt

Investments, L.L.C. and Robert T. Burda (collectively, "Defendants"), states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Capmark Finance Inc. ("Servicer") is a California corporation with its

principal place of business in Horsham, Pennsylvania. Servicer is the servicing agent for U.S.

Bank National Association, as Trustee for the Registered Holders of the 1998 FMAC Loan

---

[1] Kay S. Kress, Esq. of Pepper Hamilton LLP, Suite 3600, 100 Renaissance Center, Detroit, Michigan, will be
seeking admission as a visiting attorney under Local Rule 83.5.3 on behalf of the plaintiffs.

#8646092 v2 (128542.31

Receivables Trust 1998-D ("Secured Party"), a special purpose business trust organized and existing under the laws of the State of Delaware and brings this action on behalf of the Secured Party (the "Plaintiff").

2.      Defendant, Sondocatt Investments. L.L.C. ("Sondocatt") is a Massachusetts limited liability company with its principal place of business located at 788 Memorial Drive, Chicopee, Massachusetts 01020.

3.      Defendant Burda is an individual, and upon information and belief, the Managing Member of Sondocatt with an address of 788 Memorial Drive, Chicopee, Massachusetts, although he may be a resident of Dublin, Ohio.

4.      This Court has subject matter jurisdiction based on 28 USC § 1332(a)(1) as the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and complete diversity of citizenship exists between the parties.

5.      Venue is proper in this Court pursuant to 29 USC § 1391(a) because: (i) the Defendants do business in this district, (ii) Sondocatt's principal place of business is located in Chicopee Massachusetts, (iii) a substantial portion of the events and omissions giving rise to the claims arose in this district, and (iv) a substantial part of the property with is the basis for this action is situated in this district.

## BACKGROUND

### LOANS

6.      On or about September 29, 1998, Defendants borrowed from Franchise Mortgage Acceptance Company, a Delaware corporation ("FMAC") the aggregate amount of $6,374,000 (the "Loans") in order to purchase five "Wendy's" restaurants (collectively, the "Franchises") in Massachusetts. The Franchises are listed on Exhibit A attached hereto and incorporated herein as Exhibit A.

-2-

7.      Defendants simultaneously executed five separate secured promissory notes (the "Notes") in the amounts listed on Exhibit A.  A representative of the Notes is attached hereto and incorporated herein as Exhibit B.

8.      In connection with each Original Note, the Defendants executed a Pledge and Security Agreements (the "Security Agreements") for each Franchise in favor of FMAC which grants to FMAC a security interest in certain defined collateral, including, but not limited to, all personal property at each Franchise, as well as defining and delineating the representations, warranties and covenants of the respective Defendants.  A representative of the Original Security Agreements is attached hereto and incorporated herein as Exhibit C.

9.      In addition to the Notes and the Security Agreements, the Defendants executed mortgages (the "Mortgages") in favor of FMAC with regard to each of the five Franchises in order to secure the payment of the respective Note plus interest and periodic charges as evidenced in the terms of the Notes and the Agreements entered into between the Defendants and FMAC.  A representative of the Mortgages is attached hereto and incorporated herein as Exhibit D-1.  The Mortgages were amended on May 3, 1999, and the Amendment is attached hereto and incorporated herein as Exhibit D-2.[2]

10.     Simultaneous with the execution of the Notes, Security Agreements and Mortgages, Defendants executed the Cross-Default and Cross-Collateralization Agreement, which, among other things, provides that each of the Franchises are deemed to be collateral for each and all of the Loans (the "Agreement") (the Notes, Security Agreement, Mortgages, as

---

[2] All of the Notes, Security Agreements, and Mortgages, as amended on each of the Franchises are identical, except for the Franchise Address and the amount of the Loan.  All of the Loan Documents are not attached hereto because they are voluminous, but will be provided if requested by the Defendants or the Court.

amended and the Agreement shall be hereinafter collectively referred to as the "Loan

Documents"). The Agreement is attached hereto and incorporated herein as Exhibit E.

11.     The Secured Party and Plaintiff is the successor-in-interest to FMAC with

respect to all of the Loan Documents.

12.     Simultaneous with the transfer of the Loan Documents from FMAC to the

Secured Party, FMAC entered into a Servicing Agreement with the FMAC Loan Receivables

Trust 1998-D and the U.S. Bank National Association, as Trustee, which, among other things,

authorized FMAC to bring actions on behalf of the Secured Party.

13.     Through a series of transactions, Capmark Finance Inc. became the

successor-in-interest to FMAC under the Servicing Agreement and is, therefore, authorized to

bring this action and enforce the rights of the Secured Party.

14.     All appropriate UCC financing statements have been properly filed and all

Mortgages and amendments have been properly recorded.

15.     Pursuant to the terms of the Loan Documents, the Secured Party holds a

properly perfected security interest in all of the personal and real property interests of the

Defendants relating to the Franchises.

16.     Pursuant to § 8.2 of the Security Agreements, upon the occurrence of an

event of default under any Note, the Secured Party may, by written notice to the Defendants,

accelerate and declare the Notes due and payable (*see e.g.*, Exhibit C, § 8.2).

17.     In addition, § 7.1.2 of the Security Agreements and the Agreement

provide for the cross-default of all obligations between the Secured Party and the Defendants.

DEFAULT UNDER THE LOAN DOCUMENTS

18.     The Defendants are in default pursuant to the terms and conditions of the

Laon Documents, because, among other reasons, the Defendants (a) have not made a payment to

-4-

#8646092 v2 (128542.31)

the Secured Party since April 1, 2007, (b) have failed to provide the financial information

required by § 3.19 of the Security Agreements, and (c) have failed to timely pay the meal taxes

for the Franchises owed to the State of Massachusetts (the "State") for the operation of the

Franchises

19.     Defendants were given notice of the default by the Secured Party via

Federal Express on May 11, 2007 (the "Default Notice"), which notice informed the Defendants

that an event of default in the Loan Documents had occurred based on, among other things, the

Defendants' (a) failure to pay the required installments of principal, interest and other accrued

charges, including late fees, and (b) failure to provide the required financial information. (*see*

Default Notice, attached hereto and incorporated herein as Exhibit F).

20.     Subsequent to the Default Notice, on May 23, 2007, the Secured Party

informed the Defendants that it was exercising its rights under the Loan Documents to accelerate

the repayment of the loan and demand was made for payment of all amounts due under the

Notes. (*See* Acceleration Notice, attached hereto and incorporated herein as Exhibit G).

21.     As of May 23, 2007, the secured indebtedness, including principal and

accrued non-default interest, late charges and escrow amounts, owed by the Defendants to the

Secured Party was $4,602,720.49.

22.     The Defendants continue to remain in possession and control of the

Franchises, which constitutes the collateral of the Secured Party (the "Collateral").

23.     The State has filed Notices of State Tax Lien for unpaid meal taxes against

Sondocatt in the aggregate amount of $238,547.35. Copies of the Notices are attached hereto

and incorporated herein as Exhibit H.

24.     The Secured Party has unsuccessfully attempted to verify whether the

Defendants are current with the Franchisor, Wendy's International, Inc. (the "Franchisor"), and

has reason to believe that they may be in default.

25.     Given the Defendants default under the Loan Documents, the non-

payment by the Defendants of its tax obligations and the inability to verify the status of the

franchise payments due to the Franchisor, the Secured Party is fearful that its collateral may be

exposed to damage, destruction and/or further dissipation.

## COUNT 1:  BREACH OF CONTRACT UNDER THE LOAN DOCUMENTS
### AS TO THE DEFENDANTS

26.     Secured Party realleges the allegations of Paragraphs 1 through 25.

27.     The Loan Documents are a valid contract between the Secured Party and

the Defendants.

28.     Pursuant to the Loan Documents, Defendants agreed to pay the entire

indebtedness under the Notes by making monthly installments of principal, interest and other

accrued charges.

29.     Pursuant to § 3.19 of the Security Agreements, Defendants agreed to

provide periodic financial information.

30.     Pursuant to §§ 3.11 and 3.21 of the Security Agreements, Defendants

agreed, among other things, to maintain its Franchise Agreements with the Franchisor and to

maintain its business and the Collateral.

31.     Defendants have failed to make timely and monthly payments to Secured

Party since April 1, 2007, have failed to provide monthly financial information, are not timely

paying their tax obligations and upon information and belief are not timely paying the Franchisor

under the terms of the Franchise Agreement.

32.     Defendants have thereby breached the Loan Documents.

33.     Pursuant to § 8.3 of the Security Agreements, Secured Party is entitled to all remedies articulated in the Loan Documents, granted under the Uniform Commercial Code and granted under any applicable statute, law, rule or regulation.

34.     Pursuant to Paragraph 19 if the Mortgages, the Secured Party, may, in any action to foreclose, upon the threatened waste to the mortgaged property, or upon the occurrence of a default "shall be at liberty, without notice, to apply for the appointment of a receiver of the Rents, and shall be entitled to the appointment of such receiver as a matter of right, without regard to the value of the Mortgaged Property as security for the Obligations, or the solvency or insolvency of any person then liable for the payment of the Obligations."

35.     As of May 23, 2007, Defendants owe to the Secured Party, the amount of $4,602.720.49, which represents principal and accrued non-default interest, late charges and escrow amount plus together, among other things, accrued interest and interest which will accrue (default and non-default), accrued late fees and late fees that will accrue, penalties, costs and expenses to be incurred by the Secured Party in collection thereof, including without limitation, actual attorneys' fees and legal expenses.

**WHEREFORE**, Secured Party respectfully requests that this Court enter a judgment that:

A.     Determines and awards to Secured Party the amount due to the Secured Party by the Defendants pursuant to the Loan Documents;

B.     Awards Secured Party interest, attorneys' fees, yield maintenance and all other accrued amounts under the Loan Documents;

#8646092 v2 (128542.31

-8-

C.      Orders and enjoins Defendants and their agents from damaging,
destroying, concealing, disposing of or further dissipating the value of the collateral of the
Secured Party;

D.      Orders and enjoins Defendants and their agents from making any
distributions or dividends, including salaries, fees and other compensation to Defendant Burda;

E.      Orders Secured Party its costs, including reasonable attorneys' fees
authorized under the Loan Documents;

F.      Orders the appointment of a receiver to take charge of, manage, presence,
protect and oversee the operations of the Franchises, and after the payment of expenses of the
receivership and after compensation to the receiver, to apply the net proceeds derived therefrom
to the amounts owed Secured Party.

G.      Grants such other relief as this Court deems equitable and just.

#8646092 v2 (128542.31)

Respectfully submitted

By: _____

Steven Weiss, Esq.
BBO#545619
Mark H. Bluver, Esq.
BBO#560330
Thomas J. O'Connor, Jr., Esq.
BBO#640433
Shatz, Schwartz and Fentin P.C.
1441 Main Street
Springfield, MA 01103
Telephone: (413) 737-1131
Facsimile: (413) 736-0375

Attorneys for Capmark Finance Inc., as Servicer for
U.S. Bank National Association,

Dated: July 2, 2007

\07\0292\Complaint.4601

#8646092 v2 (128542.31